UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA HOUGH,                                    Case No. 12-14678

                    Plaintiff,                 Nancy G. Edmunds
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Michael Hluchaniuk
                                               United States Magistrate Judge
                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 12)**

## I.   PROCEDURAL HISTORY

A.   Proceedings in this Court

On October 23, 2012, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Nancy G. Edmunds referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claims for a period of

disability and disability insurance benefits.  (Dkt. 2).  This matter is before the

Court on cross-motions for summary judgment.  (Dkt. 8, 12).

B.   Administrative Proceedings

Plaintiff filed the instant claims on May 29, 2009, alleging that she became

disabled beginning August 1, 2003. (Dkt. 6-2, Pg ID 39). The claim was initially

disapproved by the Commissioner on September 10, 2009. (Dkt. 6-2, Pg ID 39).

Plaintiff requested a hearing and on February 14, 2011, plaintiff appeared with a

representative before Administrative Law Judge (ALJ) Deborah L. Rose, who

considered the case de novo. In a decision dated March 17, 2011, the ALJ found

that plaintiff was not disabled. (Dkt. 6-2, Pg ID 39-47). Plaintiff requested a

review of this decision. The ALJ's decision became the final decision of the

Commissioner when, after the review of additional exhibits,[1] the Appeals Council,

on August 22, 2012, denied plaintiff's request for review. (Dkt. 6-2, Pg ID 18-

23); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

    [1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   FACTUAL BACKGROUND

A.   <u>ALJ Findings</u>

Plaintiff was 49 years of age at the time of the most recent administrative hearing on February 14, 2011.  Plaintiff has past relevant work as a registered nurse performed at the heavy exertional level.  (Dkt. 6-2, Pg ID 45).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date through the last date insured of September 30, 2008.  (Dkt. 6-2, Pg ID 41).  At step two, the ALJ found that through the date last insured, the claimant had the following severe impairments: combination of asthma, degenerative disc disease of the cervical spine, minor calcification in left knee, gastroparesis, obesity, and IBS (irritable bowel syndrome).  (Dkt. 6-2, Pg ID 41).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.  The ALJ concluded that plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can have only occasional exposure to respiratory irritants; can never climb ladders, ropes, or scaffolds; and can only occasionally engage in climbing stairs or ramps, balancing, stooping, kneeling, crouching, or crawling.

Report and Recommendation
Cross-Motions for Summary Judgment
*Hough v. Comm'r*; Case No 12-14678

(Dkt. 6-2, Pg ID 42).

At step four, the ALJ found that plaintiff could not perform her past relevant work as an RN at the heavy exertional level.  (Dkt. 6-2, Pg ID 45).  At step five, the ALJ concluded that there were a significant number of jobs in the national economy that plaintiff could perform.  The ALJ concluded that plaintiff could not perform a full range of light work and her ability to perform all the requirements of light work was impaired by additional limitations.  Based on the vocational expert testimony, the ALJ concluded that there were sufficient unskilled light occupations in the regional and national economy that plaintiff could perform with her RFC.  The ALJ also concluded that based on plaintiff's skill of knowing medical terminology, reading and writing reports, charting, and dealing with the public, those skills transfer to other sedentary jobs, so plaintiff could perform various semi-skilled sedentary jobs.  (Dkt. 6-2, Pg ID 46).  Based on the foregoing, the ALJ concluded that plaintiff was not under a disability from the claimed onset date through the last date insured.  (Dkt. 6-2, Pg ID 47).

### B.   Plaintiff's Claims of Error

According to plaintiff, the ALJ erred in failing to consider the impact of plaintiff's entire symptom complex on her ability to work.  Although the ALJ did not find that plaintiff's peripheral neuropathy was a "severe" impairment, she was still obligated to consider its affect on plaintiff's ability to work.  The practice of

2:12-cv-14678-NGE-MJH   Doc # 13   Filed 01/24/14   Pg 5 of 26   Pg ID 575

accepting the findings of treating sources is fundamental to social security law.

Dr. Gosling has treated claimant since 2002.  His diagnoses were formed with the

benefit of objective diagnostic testing, as well as his extensive medical knowledge.

Moreover, the record contains no medical evidence to the contrary.  Plaintiff

therefore urges that her neuropathy, in conjunction with the severe impairments of

degenerative disc disease, minor calcification in the left knee and obesity

sufficiently limit her abilities to stand and walk so as to preclude her from the

walking and standing demands of light work.  She further contends that the

unscheduled interruptions necessitated by the IBS is preclusive of sedentary work

as well.

        In concluding that plaintiff retained the residual functional capacity for light

work, the ALJ observed that "claimant's treating physicians did not place any

functional restrictions on her activities that would preclude light work activity ...."

(Tr. 28).  However, disability is not just a function of the restrictions imposed by

the treating physician.  Social Security Ruling 96-8p specifically requires that the

RFC assessment "include a narrative discussion describing how the evidence

supports each conclusion, citing specific medical facts (e.g., laboratory findings)

and nonmedical evidence (e.g., daily activities, observations)."  Plaintiff submits

that the ALJ erred reversibly in formulating an RFC without consideration of the

sequella of both the peripheral neuropathy and irritable bowel syndrome, and that

the resulting unfavorable decision therefore failed to meet the substantial evidence requirement of *Smith v. Secretary of Health & Human Services*, 893 F.2d 106, 108 (6th Cir. 1989).

      C.     <u>The Commissioner's Motion for Summary Judgment</u>

Plaintiff had a number of impairments, but, according to the Commissioner, she only raises two with specificity before this Court. Thus, the Commissioner contends that she has waived any argument regarding the others. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). According to the Commissioner, the following findings by the ALJ are not disputed: that plaintiff's other impairments were "mild in combination," that the degenerative changes in her spine were "slight," and that the calcifications in her knees were "tiny." (Tr. 28). These findings stand in contrast to plaintiff's testimony that, *inter alia*, she had "a lot of back pain" (Tr. 44) and her statement that "lower back problems caused [her] constant pain." (Tr. 148). The Commissioner mentions these claims by plaintiff since they affected the ALJ's assessment of her credibility, even though plaintiff has chosen not to raise them with specificity before this Court.

Turning to plaintiff's peripheral neuropathy, the ALJ correctly noted that plaintiff complained in December 2005 of dysthesia (i.e., abnormal sensation) in both feet over the past couple of weeks, but also observed that she failed to mention problems with her feet on follow-up. (Tr. 26). Plaintiff does not

challenge these conclusions, but appears to argue that the ALJ did not accept the diagnosis of neuropathy.  However, plaintiff does not cite to any portion of the ALJ's decision in which the ALJ said that.  Rather, the ALJ commented that plaintiff did not continue to complain of dysthesia after complaining about its existence for a few weeks in December 2005.  Plaintiff cites nothing in Dr. Gosling's records that is to the contrary.  In 2011, he only said that she "has . . . type II diabetes (complicated by gastroparesis and peripheral neuropathy)."  (Tr. 501).  That statement says nothing about the severity of her neuropathy or whether it existed for a significant period of time prior to the date last insured.  Given the sparsity of reference to neuropathy in plaintiff's records from the period she was insured, the Commissioner contends that the ALJ could reasonable conclude that plaintiff's peripheral neuropathy did not impose any further limitations on her prior to her date last insured.

Further, according to the Commissioner, Dr. Gosling's records are inconsistent with plaintiff's allegations.  Plaintiff claimed that her feet were causing her constant pain in 2003 (Tr. 148), and testified that she was experiencing neuropathy and "nerve sharp, stabbing pains" during that time.  (Tr. 43-44).  She was in so much pain — a 6 or 7 on the ten-point scale, even with medication — that she would cry as soon as she got into her car after work.  (Tr. 45).  Given this testimony, the ALJ was surely entitled to consider that she made

only infrequent comments about neuropathy to her doctor.  Yet, plaintiff cites no

such comment prior to December 2005, over two years after plaintiff alleges that

she experienced severe neuropathic pain.  Indeed, the Commissioner points out

that it is unclear what medication or other treatment she received for neuropathy

while insured for benefits.  Nor is it clear whether any diagnostic testing (e.g., an

EMG) was done to confirm the diagnosis or its severity.

Plaintiff attempts to bolster her claim of severe peripheral neuropathy by

referring to her blood-glucose readings, but the evidence actually shows that her

glucose was fairly well controlled.  Plaintiff refers to one type of glucose reading,

the HbA1c, and indeed her results were slightly elevated — generally in the low

sixes.  However, it is not even clear that plaintiff had diabetes; diagnosis requires

an HbA1c of 6.5 or above confirmed by a second measurement unless clear

symptoms exist, and almost all of plaintiff's measurements were in the 5.7-6.4

range suggesting prediabetes.  Dr. Gosling referred to plaintiff's dysthesia as

"prediabetic" and recorded a diagnosis of "impaired glucose tol[erance]" in 2006.

(Tr. 303).  Impaired glucose tolerance refers to patients with glucose values that

are higher than normal but not high enough to meet the criteria for diabetes.

Although Dr. Gosling referred to diabetes in 2011, impaired glucose tolerance

does frequently develop into diabetes over time, and he did not say in that

statement that she had diabetes back in 2003 when she alleged her severe

neuropathy started, or indeed before the date last insured at all.  According to the Commissioner, the important point is that, if plaintiff had diabetes, her blood-test values while insured were barely high enough to establish the diagnosis and the condition was under fairly good control. *Cf.* Tr. 261 (noting that the goal for HbA1c for diabetes is less than 7%).

Thus, while plaintiff's prediabetes or diabetes could explain the sensory abnormalities in her feet, the lab results do not on their own suggest uncontrolled diabetes or more than mild diabetes.  Plaintiff cites no evidence that these levels of prediabetes or diabetes would be expected to cause the severe neuropathy plaintiff complained of, particularly given her testimony that the condition was severe back in 2003.  However, the ALJ did give great weight to the opinion of a state agency physician who reviewed the record after the date last insured and concluded that plaintiff could do light work after specifically noting her complaints of diabetic neuropathy at three different points.  (Tr. 493-95).  As the ALJ noted, plaintiff's own doctors never stated functional limitations inconsistent with light work; plaintiff obtained a statement from Dr. Gosling, but it contained nothing about her abilities and limitations.  (Tr. 501).  In light of plaintiff's limited complaints to doctors about her feet, her borderline diabetic glucose-test results, and the state agency physician's uncontradicted opinion, the Commissioner maintains that the ALJ's conclusion that plaintiff's alleged neuropathy did not preclude her from

doing light work is supported by substantial evidence.  Furthermore, as plaintiff tacitly admits, the ALJ made an alternative step five finding that plaintiff could do sedentary work based on her transferrable skills, so the ALJ's ultimate finding of non-disability would be supported by substantial evidence even if plaintiff were limited to sedentary work.

The ALJ could conclude that plaintiff's irritable bowel syndrome did not require any specific limitations in her residual functional capacity where she complained of it only occasionally and non-specifically, and where test results showed only mild or apparently asymptomatic abnormalities.  Plaintiff alleges that the ALJ failed to take into account her irritable bowel syndrome.  However, the record shows that plaintiff's primary gastroenterological complaint was GERD (gastroesophageal reflux disease, or acid reflex in common parlance).  Plaintiff does not link the nausea and heartburn she experienced due to GERD to any work-related limitations on functioning, but instead claims that the ALJ did not accommodate her need to go to the bathroom frequently due to irritable bowel syndrome (IBS).  She cites a few instances in which she complained of diarrhea, but fails to place them in the context of her numerous visits to gastroenterologists and other physicians concerning her primary gastroenterological complaint of GERD. While plaintiff testified that she needed to stop once or twice at a McDonalds when driving for an hour (Tr. 53), there is no indication that she was

10

offered prescription medicine specifically for diarrhea or irritable bowel syndrome while she was insured for benefits. Plaintiff points to two mild abnormalities on diagnostic testing to support her claim that she had severe enough IBS to warrant restrictions in her residual functional capacity. A stomach emptying study showed mild gastroparesis (i.e., delayed stomach emptying). (Tr. 472). While a previous study had shown moderate gastroparesis, some of plaintiff's medication was withheld prior to that study. (Tr. 417). As plaintiff's gastroenterologist put it, her stomach was "not emptying quite normally," although there was an improvement in function on Reglan. (Tr. 417). Plaintiff, even though represented by counsel at the administrative level, did not ask either her gastroenterologist or primary-care doctor for an opinion concerning the effect of her mild gastroparesis on her ability to perform work-related functions. The only relevant medical opinion was provided by the state agency physician, who noted the gastroparesis but confirmed that she could do light work with normal breaks. (Tr. 195).

Plaintiff also cites a finding of diverticulosis on colonoscopy, but does not explain the significance of this finding. Diverticulosis is the formation of pockets (diverticula) in the colon and is usually asymptomatic, although some diverticula become inflamed or bleed. *See The Merck Manual*, Diverticulosis, available at http://www.merckmanuals.com/professional/gastrointestinal_disordersdiverticular_disease/diverticulosis.html. It is a common finding in individuals over 40. *See*

*id*.  There is no indication that plaintiff's diverticula were symptomatic, inflamed, bleeding, or numerous; rather, the report discussed "scattered left-sided diverticulosis." (Tr. 418).  She was recommended to follow up, but the follow-up note made no more than incidental mention of the diverticulosis.  (Tr. 417).  Of note, the Commissioner points out that there is no evidence that plaintiff had diverticulitis, a more serious condition in which the diverticula are inflamed.  *See Merck Manual*, Diverticulosis.  Without any medical opinion evidence other than that of the state agency physician, the Commissioner contends that it is speculative whether plaintiff's "scattered" diverticulosis had anything to do with her complaints of irritable bowel syndrome, much less whether they demonstrate irritable bowel syndrome of such severity that the ALJ was required to include specific limitations in the residual functional capacity finding.

The Commissioner also points out that while plaintiff did complain of diarrhea on a few occasions, her complaints of diarrhea were merely subjective reports of symptoms, not objective medical evidence gathered by a physician or laboratory.  *See* 20 C.F.R. § 404.1528 (defining symptoms as "your own description[s] of your physical or mental impairment" as opposed to signs or laboratory findings, which are findings based on medically acceptable clinical-diagnostic techniques apart from the claimant's statements or medically acceptable laboratory techniques, respectively).  And her complaints were

non-specific: in 2002, a gastroenterologist wrote that "[s]he does have IBS diarrhea predominant," but with no further specification or comment about severity. (Tr. 352). No medication for diarrhea-predominant IBS is listed. (Tr. 352). The Commissioner points out that IBS is a common disorder, and its diagnosis does not require symptoms of such severity that an individual would be unable to work without special breaks. Thus, the mere mention of the diagnosis does not establish the limitations of which plaintiff complains. It should also be noted that plaintiff was working at this time. Dr. Gosling stated that plaintiff had "frequent loose stools related to her high dose esomeprazole [i.e., Nexium] and metoclopramide" treatment (Tr. 335), but again there was no specification as to exactly how frequent those stools were or any reference to treatment for them. Indeed, Dr. Gosling started plaintiff on metformin (apparently as a weight-loss drug for people with prediabetes) even though he was concerned that she would not tolerate it because of her loose stools. (Tr. 335). The Commissioner argues that if Dr. Gosling was at least willing to try another drug that could cause diarrhea, this suggests that her diarrhea symptoms at that time were not intolerable, particularly given that he did not prescribe any medication for that diarrhea.

Accordingly, the Commissioner contends that the ALJ could appropriately give significant weight to the opinion of the state agency physician, who

commented on plaintiff's complaints of IBS (Tr. 494) and her mild gastroparesis with significant improvement (Tr. 495), as well as her diverticulosis (Tr. 495), yet concluded that she could do light work without specifying the need for special breaks or other limitations. On follow up, the state agency physician confirmed that plaintiff could work with normal breaks (Tr. 195); although the focus of the specific inquiry was her pain, the Commissioner contends that the physician presumably would have stated if she needed more than normal breaks for another reason. Given plaintiff's infrequent complaints about diarrhea, the non-use of medication intended to treat diarrhea until after her insured status expired, the "mild" or apparently asymptomatic laboratory findings, and the state agency physician's conclusion that plaintiff could work with normal breaks after considering all relevant medical evidence, the Commissioner asserts that the ALJ did not err in concluding that plaintiff's IBS did not rise to the level of severity to require specific limitations in her residual functional capacity.

## III.  DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant

2:12-cv-14678-NGE-MJH    Doc # 13    Filed 01/24/14    Pg 16 of 26    Pg ID 586

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

        If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

Report and Recommendation
Cross-Motions for Summary Judgment
*Hough v. Comm'r*; Case No 12-14678

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe

impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

        If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

        C.      Analysis and Conclusions

        First, the undersigned would like to point out that plaintiff's brief did not

provide much of a roadmap to help the Court navigate her claims of error.  It is not

sufficient for a party to mention a possible argument "in a most skeletal way,

leaving the court to ... put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d

989, 995-96 (6th Cir. 1997).  Indeed, a court need not make a party's case by

scouring the various submissions to piece together appropriate arguments.  *Little v.

Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).   And, the court is not

obligated to make a plaintiff's case for her or to "wade through and search the

entire record" for some specific facts that might support her motion.  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  Despite the skimpy argument offered by plaintiff, the undersigned has endeavored to thoroughly review the record and sort out whether plaintiff's claims have any merit, as discussed in detail below.

In this case, plaintiff complains that the ALJ did not properly consider her neuropathy.  While the, ALJ did not find this to be a severe impairment,[2] the ALJ certainly considered throughout the decision, whether and to what extent, plaintiff's neuropathy impaired her ability to work during the period for which she was insured.  The ALJ discussed plaintiff's claims that she suffered from neuropathy, the test results indicating neuropathy, and her physician's statement regarding this condition.  (Tr. 26, 27).  However, the ALJ concluded that plaintiff's neuropathy did not limit her any more than as found in the RFC.  Plaintiff points to no medical or opinion evidence suggesting that she is more limited because of her neuropathy than as found by the ALJ.  And, while plaintiff complains that the ALJ did not take the "diagnoses" of her treating physician fully

---

[2]  Plaintiff does not appear to contend that the ALJ erred by failing to find her neuropathy to be a severe impairment at step 2.  Rather, plaintiff seems to be arguing that the ALJ failed to account for the limitations caused by her neuropathy in combination with her other impairments in the RFC finding.  Notably, in determining the RFC for purposes of the analysis required in a social security disability benefits case, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere.  Social Security Act, § 223(d)(2)(B), as amended, 42 U.S.C.A. § 423(d)(2)(B).

into account, her treating physician offered no opinion that she was more physically limited than as found by the ALJ. *See Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability."). Plaintiff simply does not provide any support for her claim that "adding" in some unquantified additional standing and walking limitation based on her neuropathy should undermine the ALJ's decision, which certainly appears to be thorough, well-reasoned, and based on substantial evidence.

In addition, plaintiff offers no explanation as to how any additional walking/standing impairment affects the ALJ's alternative finding that she could perform certain semi-skilled sedentary occupations in sufficient numbers in the national economy. Thus, even if her ability to stand and walk because of her neuropathy is more limited than as found by the ALJ as to the limited category of light work, plaintiff offers no evidence to suggest that the ALJ's alternative finding is not supported by substantial evidence.

Further, plaintiff's "diagnoses," in and of themselves, are not evidence that she is limited in any particular way. Simply because plaintiff suffers from a certain condition or carries a certain diagnosis does not equate to disability or a particular RFC. Rather, the residual functional capacity circumscribes "the

claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from–though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability before the last date insured of September 30, 2008, let alone going back to 2003, when she claims she became disabled.

As to plaintiff's claim of impairments from IBS, there is virtually no evidence in the record, and plaintiff cites none, suggesting that normal breaks in the work day could not accommodate plaintiff's seemingly mild symptoms. In addition, plaintiff received little, if any treatment, for her IBS symptoms, which suggests that her condition was not so severe as to preclude her from working or significantly limit her in any way. "In the ordinary course, when a claimant

alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment.  A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 Fed.Appx. 841, 846 (6th Cir. 2004), citing *Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir. 1986).  Similarly, if plaintiff's IBS were as severe as claimed, it seems reasonable that she would have been treated for it and complained more often about such symptoms to her physician, but she did not.  *See Ealy v. Comm'r of Soc. Sec.*, 172 Fed.Appx. 88, 90 (6th Cir. 2006) (upholding ALJ's determination that claimant's "claimed limitations 'were not fully credible' because they were 'inconsistent with . . . the lack of more aggressive treatment . . . and the claimant's ordinary activities.'").  Finally, the ALJ's decision is also supported by the State Agency consulting physician.[3]  (Dkt. 6-8, Pg ID 516-523).  Again, plaintiff simply offers no medical or opinion evidence suggesting than she is more limited than as found by the ALJ.  For these reasons, the undersigned finds the ALJ's decision to be fully supported by substantial evidence.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[3] Notably, state agency consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  *See* 20 C.F.R. § 404.1527(f)(2)(I).

Report and Recommendation
Cross-Motions for Summary Judgment
*Hough v. Comm'r*; Case No 12-14678

summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: January 24, 2014                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 24, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Marc J. Littman, Andrew J. Lievense and Jason Scoggins and Social Security Administration.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7850
                                          tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Hough v. Comm'r*; Case No 12-14678